Will the clerk please call the first page? 3-22-0095 Banu Shemar M.D. Appellant by Michael Goldberg v. The Division of Professional Regulation of the Illinois Department of Financial & Professional Regulation Cecilia Abundix Appellate by Bridget DePetra Counseling may proceed. Thank you. May it please the Court and Counsel, Dr. Sharma comes before you today asking that you reverse this case before the Department of Professional Regulation. I want to focus today on how the case came to be. This is not, which is a very common option, an example of the department saying to this doctor, we want to punish you, something bad happened in Oregon and there's going to be a process. What they did was they said, you are in immediate danger right now and we are going to give you, we're going to impose a suspension on your license, which I would say is, there was no danger and it should be reserved for someone. You said you are in immediate danger? To him, to Dr. Sharma. Oh, correct. And so what happened was in Oregon in 2000. How is he in immediate danger? He's not in immediate danger. Right. So he should not have been temporarily suspended. What is he in danger of? I thought their role is to protect physicians who are dangerous to patients. It is. Okay. But it's to protect the public. That's what I mean. Right. So if you're going to temporarily suspend a doctor, you have to then give him or her a hearing within a certain amount of time, 15 days. But they didn't. And so what they did was, we're before you today saying that the process, the department's own process that they are supposed to follow when there is a temporary suspension was not followed. And the facts are important because it shows that if there was the hearing that he was supposed to get, they would not have continued the suspension. There's no doubt the director can do it without the doctor's presence and without a hearing. It's an ex parte proceeding. But then where we differ from the departments, what happens next? The department says, you get an expedited hearing. But that expedited hearing within days is on the entire complaint, on the entire issue. It's not on the issue of are you in immediate danger. That's what the hearing should be. We know that from the department's own rules. Counsel, was the reprimand out of Oregon back in 2015? It was. And then it wasn't until 2021 that Illinois took the immediate action. That's correct. And Illinois knew about the reprimand in Oregon back in 2015. So what happened in Oregon ended in 2021 when he surrendered his license. And then as soon as he surrendered his license in Oregon, Illinois took an action to temporarily suspend him, even though the issues that they temporarily suspended him for, they knew about in 2015 and 2016 and took no action. The problem is that they did not, we wouldn't have to be here if the department followed their own rules and just gave him the expedited hearing he needed, he was entitled to, to see if there was an immediate danger or not. But he didn't get that. We know the rules require that because the Medical Practice Act says you get that hearing within 15 days. Fine, great. You get a hearing to show if there's an immediate danger. The other, he gets 20 days to answer the complaint. How could you possibly have a doctor be forced to do a hearing within 15 days on a complaint that you get 20 days to answer? That same act says that the parties have 30 days to exchange discoveries. Now, if it was the expedited hearing that we were supposed to have within 15 days, then I would agree that all the formal rules of discovery wouldn't be there, but it wouldn't be a hearing on the merits. Why would it make, it makes no sense to have this doctor have a hearing on the merits within 15 days when I've done hundreds of cases? It could, it takes at least a year to have a hearing. That's not the case for a summary suspension. It's within 15 days, and that needs to be there. It's in every state. Every hospital has that. You are dealing with doctors, and you're dealing with the public. So if a doctor is drunk, has a drug problem, I've seen doctors that have had two colonoscopy deaths in two days, and there's a bunch of colonoscopy scheduled. Of course, you can't wait to have a hearing there. But in a case like this where information is so stale and the department, for some reason, takes that action, that's what the due process hearing within 15 days is for, not on the merits, but to say, hey, did we make the right decision? This original decision was ex parte. We're doing it to protect the public, but we get some minimum due process within 15 days to determine if that's the case or not. I made that argument at the department. Counsel, isn't this, didn't Kungar go on after initially saying that you were entitled to a hearing, say that it was moot because there was a later hearing? No, there wasn't a later hearing. There was only one hearing for the doctor. It was a combined hearing. They didn't give us the expedited hearing. They said, okay, you get a hearing within 15 days, but it's on the substance condition. There was only one hearing for Dr. Sharma. Counsel, at the time that Illinois initiated this action, this emergency suspension, had there been a determination that the standard of care had been breached in Oregon for what the doctor allegedly surrendered his license for? Was there any evidence given as to that there had been a breach of a substantial duty of care? No, no. These were all negotiated. Was there any Illinois action that was pending against the doctor at the time for an Illinois event? No, no, no, no, nothing at all. Counsel, wasn't there a stipulated order in Oregon in which they stipulated to some pretty distressing facts with regards to this doctor? The doctor stipulated to him? Not in a hearing, but in a settlement. It was a stipulated order. The doctor stipulated that certain things happened that resulted in the death of a patient. Correct, in 2015, which the department took action and reprimanded him. So the department looked at that same document that you're talking about in 2015 and issued a reprimand to Dr. Sharma. It wasn't until he had been in Oregon since 2012. He left in 2021. He was done having situations that he had to deal with in Oregon. He left. That is a public act in Oregon. It's not a judgment. It doesn't say you're revoked, you're suspended, you're a bad doctor. They say, hey, this doctor gave up his license. He surrendered. As soon as Illinois found out, they took that action saying he's in immediate danger based on… Wait, wait, wait. See, I want to get your language. Maybe I'm misunderstanding. It isn't that he poses a danger to the public? Yes. He's not an immediate danger. What is he an immediate danger? Well, the language… Maybe I'm not clear on my question, but he's an immediate danger. I'm not clear on the way I'm saying it. He presents an immediate danger to the public. He poses an immediate danger to the public. He poses an immediate danger to the public, yes. Right, okay. I'm using shorthand to say he is… That's what I kind of helped you out with. Danger of what? You could say, well, he's in immediate danger of losing his license. I am misspeaking. Okay. I apologize. So, the hearing that he did get, there was no evidence introduced by the department. They just said, this doctor gave up his license, and they arrested him. That's it. They introduced the document that said that he had the stipulation back in 2015. Did he have other licenses that were still valid in other states at that time? He had a license in Indiana and in Washington. They knew the same thing that Illinois did, did not take that action. Oregon, where this all happened, never took a temporary suspension, emergency suspension. They never took that action. So, we're at the hearing in 15 days. We have to have this expedited hearing on the merits, which is… That makes no sense. And we managed to get a doctor to come in and testify about the substance. Two doctors. And we're not allowed to. No. It's just, this is a matter of whether he was disciplined in Oregon or not. They didn't have an expert. We cite case law that says, that directs in Farney that there needs to be expert testimony. Because we can't sit here in circuit court on administrative review or in the appellate court and determine if someone's a danger, if they present a danger, pose a danger to the patient. We don't know if this is a good doctor or a bad doctor. We're attorneys. We need expert testimony to judge. And it says, while it may seem idle and foolish to a board composed of physicians to present elementary questions of medicine to them by way of testimony of whether they're own brethren, using old language, yet it is far from idle to a court not trained in medicine, which is called upon to determine the manifest weight of the evidence. Exactly what we're doing here, judging the administrative review. There's no record. There's no… They didn't introduce any evidence about the medicine. We weren't allowed to introduce any evidence about the medicine. So that's a major flaw that deserves reversal. There's other issues that we raise about the punishment and the fact that he was given an indefinite suspension, even though the language in 43 of the Medical Practice Act talks about a term of suspension, a term of probation. Certainly, it's against the manifest weight of the evidence. It's arbitrary, however you want to put it, that he's still being suspended. I mean, in terms of the punishment, those are good reasons for reversal. But the real issue here is the fact that he was forced into this expedited hearing without it being what it was supposed to be. It was just switched into a hearing on the merits. And the plain language of the law, the timeframes that my client was entitled to to defend himself on the merits go way beyond the 15 days. So we know that this 15-day hearing is not supposed to be on the merits. It's supposed to be on whether you're an immediate… And he didn't get that. And we are asking that you reverse the case. Thank you. Any questions? Further questions? No, sir. Thank you. Maybe you'll have time. Right. Thanks. Counsel DeBattista, right? Correct. You may respond. Good morning, Your Honors. May it please the Court, Assistant Attorney General Bridget DeBattista on behalf of the Division of Professional Regulation of the Illinois Department of Financial and Professional Regulation and the Division's Director. Your Honors, the Director's decision here should be affirmed for three reasons. First, the Director did not clearly err in finding a violation under the Act. Second, the Director did not abuse her discretion in imposing discipline for that violation. And third, there has not been a showing of a due process violation in this matter. First, with respect to the violation of the Act, the Act provides, and it is undisputed, that adverse action taken against a license by another state is a basis for discipline under the Act. What is the adverse action taken in Oregon? The adverse action taken in Oregon was the surrender by stipulated order of Dr. Sharma's license in the state of Oregon. And there were actually two instances of discipline in Oregon. So to be clear, there was a patient in 2012 who passed away. And in that situation, Oregon imposed a reprimand in 2015 as well. And Illinois, under the sister state discipline portion of the Act, also in kind imposed a reprimand. Let's look at the language, okay? So we imposed a reprimand in Oregon. To the average person, that would be an adverse action against a physician. Correct, Your Honor. How is a surrender by a physician an adverse action when it's voluntarily undertaken? Because, Your Honor, he's no longer able to practice in the state of Oregon. So that is an adverse action taken. And a case instructive on that is the case of Gross, in which, in that case, similarly, there was a suspension of the license or was rendered inactive. And in that case, the language was slightly different, I believe, under the statute at the time, was whether that was discipline imposed. And that court did find that that constituted discipline. So under Gross, the surrender of the license, his inability to practice in the state of Oregon, is adverse action taken against his license there. So the surrender is the same as non-renewal? What did he say in the Oregon matter? In the Oregon matter, there was the board, the Oregon board, found certain facts with respect to his practice there. And although he neither admitted nor denied, he agreed to enter into an order whereby he would surrender his license. I'm still back to the surrender. Yes. Volitional surrender. Yes. Would you agree this is volitional surrender? I don't think he would have done it but for the proceedings under Oregon. So in that sense, I don't know that it was volitional, but in order to not go through the proceedings and the expense and time of that, Dr. Sharma agreed to surrender his license in that state. And counsel, doesn't the stipulated order contain specific recitations of fact that the doctor agreed to? Yes, Your Honor. And it's important here to recognize that under the act, it is an independent violation. So there is a violation for gross negligence under the act. But A12 under the act is, is there adverse action taken by another state? So that alone, adverse action taken by another state is a basis for discipline under Illinois law. And here it is undisputed that he entered into a stipulated order whereby he surrendered his license. So we have adverse action taken by another state. That is the basis for the discipline. And there's an argument. Do you understand the nature of my question? Yes. Is surrender adverse action as volitionally undertaken? I don't know that I would agree, Your Honor, necessarily that it was. There was an agreement, certainly, but it was pursuant to this action that was brought by the state of Oregon. It is not as though sua sponte, he surrendered his license. I want to get that difference. Okay. Understood, Your Honor. And so as I mentioned, there was the 2015 reprimand due to the death of a patient in 2012. Subsequent to that, there was a death of a patient in 2016, which formed the basis of the 2020 Oregon complaint, which ends. Now at this time, the physician also held a license to practice in Illinois. Correct, Your Honor, yes. The same thing as practicing in Oregon? Correct, Your Honor, yes. And I think the opposing counsel said Illinois knew about that but took no action. There was a reprimand that mirrored the reprimand in Oregon in 2015, and then there were proceedings in Oregon that did take place prior to the proceedings in Illinois that resulted in an order in 2021. So the stipulated order here was entered in 2021. Well, let's ask a question about how good monitoring is in Illinois. In other words, this was all knowledge known by the regulatory authorities in Illinois because this gentleman had a license in Illinois, correct? Correct, Your Honor, yes. The record will show that, am I correct? Yes. What did Illinois do? I'm sorry, what did Illinois do? On this record, Your Honor, yes. When they got information, what did they do? I know that on this record that once there was an adverse action taken in Oregon that there were proceedings in Illinois. So they waited until there was an adverse. Did they have the right to go and temporarily suspend his license in Illinois even before the final action in Oregon? I can only speak to what's on the record, Your Honor. I understand your question, but I see that in this case there was adverse action taken in Oregon. And due to that, and due to that being a violation under the law, it was appropriate. And the question before the court is, was it a clear error on the part of the director to… I'm just asking a broader question. I understand. How good is our regulatory process in terms of restricting physicians who may pose a danger, which you actually found, to temporarily suspend only after there was a surrender of the license in Oregon, correct? I understand Your Honor's question. Okay. But my position would be that the issue before the court is whether this discipline should be affirmed. And certainly here it should be because of this adverse action. So let's assume for sake of argument then, taking the Justice's comments in question about what Illinois did or didn't do. Yes. Assume now that there is this adverse action coming out of Oregon. So Illinois has the right to initiate proceedings. Correct, Your Honor. Then can you start to address your second point, which is whether there was, in fact, a violation in going forward without the requisite timeframes? And as to the requisite timeframes, Your Honor, could I get… Like the 15-day hearing. Oh, I see. Yes, Your Honor. So there's an argument from Dr. Sharma that the expedited hearing that's afforded under the Act applies to the temporary suspension. But that does not stand to reason when we look at the language of the statute, which provides that once a license is temporarily suspended, a hearing by the medical board shall be held within 15 days. So there is a hearing referenced. So the question becomes, what hearing is referenced there? Is it the hearing on a temporary suspension? Or is it the hearing on the ultimate deprivation of your license? What would the General Assembly have intended here? Would they have intended for a hearing on essentially a reconsideration of the Director's decision to temporarily suspend? Or are they affording an immediate hearing on the question of your license to practice there? So in the circumstance that Dr. Sharma were given a hearing under Dr. Sharma's reading on the temporary suspension and is essentially seeking reconsideration within 15 days, assuming it is denied, we can't assume that. Potentially it would be denied and asked for reconsideration. At that point, then, there is no expedited hearing because this language only provides for one expedited hearing. So that is the absurd result we detail in our brief, that this must be for the deprivation of the license ultimately. And also the prior sentence in the statute refers to a hearing, the institution of proceedings for a hearing provided under this section. So that prior sentence informs that the hearing that's being addressed in that second sentence is a hearing on the complaint. So we would submit that that affords a plain meaning and gives the statute read as a whole, the understanding that it should be afforded there. And also this comports with due process. And I might just add, on that point, there was no response to that argument in the reply brief. The argument then would be that there is no expedited hearing on the complaint. Why that would be the intention of the General Assembly was not answered in the reply. Also, this reading comports with due process considerations that we cite in the U.S. Supreme Court cases that find that a temporary preliminary deprivation of a property right is not a violation of due process so long as the process that is due is afforded in the ultimate deprivation of the license, or in this case, the suspension of the license. Also, there is an argument that expert testimony was required. However, again, there is no expert testimony necessary to determine a violation here because the question is, was there adverse action taken by another state? And that is undisputed on this record. Further, on the point of Cungar, the case there, the court did find that because the temporary suspension had now become a suspension in that case, that that issue was moot. So it's unclear what relief this court could afford on the arguments with respect to a temporary suspension hearing. What about the position to deny the opportunity to present contrary expert testimony on behalf of Dr. Sharma? And I think, Your Honor, that goes to the question of, was it necessary, was expertise required here to determine whether adverse action was taken by another state? And the position of the Department is that expert testimony is not required, and it is clear from the stipulated order, the offenses for which he entered into that stipulated order, the severity of those violations. Was that the 2015 order you're referencing? That is the 2021 order, yes, Your Honor. That's the basis for this discipline. There was an earlier reprimand for an earlier death, but this is with respect to the second death in 2016. And then that establishes the violation. And the second point on the discipline, the question there is whether this constitutes an abuse of discretion. Did the director abuse her discretion in imposing an 18-month suspension? And the question there is, is it discipline that no reasonable person could agree with? That's the showing that must be made here. And as we argue in our brief, far from showing that no reasonable person would agree with it, an 18-month suspension is eminently reasonable when in consideration that these allegations and the severity of them led to Dr. Sharma no longer being able to practice in the state of Oregon. And there's also an argument that indefinite suspension, I believe my opposing counsel may have touched on this in his opening argument, that indefinite suspensions are not permitted under the Act for a minimum term. However, the Act recognizes that there are restoration proceedings, such that if it were the case that only set-term discipline can be imposed, that would render restoration proceedings provided under the Act a nullity. There would be no need for restoration if Dr. Sharma is correct that after a set term, your suspension is automatically lifted. And again, there is not a reply to that argument from our brief, that this reading is inconsistent with the statute. And finally, also the argument in the brief, I don't know that this was raised in the opening argument, but that a lack of contrition was not appropriate to be considered, but that is in fact a basis for an aggravation. Mitigating and aggravating factors, that was something that was properly considered under the Act in aggravation. So, Your Honors, again, it comes down to three points, that there was a violation here given the adverse action, there was not an abuse of discretion given the reasonableness of an 18-month suspension, and finally, that there was no due process violated here, given that the proceedings were in accordance with the statute and due process considerations. And if the Court has no further questions, we would ask the Court affirm the Director's decision. Thank you. Thank you, Counsel. Mr. Goldberg, you may reply. Thank you. So, the adverse action, if there is an adverse action, if you assume that a surrender is an adverse action, which I don't necessarily agree with, but an adverse action is a reason to discipline. In the paragraph that mentions adverse action, it says, you establish a prima facie case, but it doesn't say that you shouldn't have an expert. It just says, hey, another state took an action. This is enough that we are concerned. It doesn't establish the ultimate discipline. You need an expert to determine that discipline, and there wasn't. I want to rebut something, just to be clear. Dr. Sharma was given a reprimand in 2015 for a 2012 case. Illinois knew about that, gave him a reprimand. In 2016, there was a case that was a malpractice case. It was settled. Oregon, Indiana, Washington, and Illinois knew, you have to report malpractice settlements to states that you have licenses in. So, Illinois knew about that case in 2016, and they knew about the 2015 case when it happened. Then nothing happened in Oregon. They had filed a complaint in 2016, and it sat there. Nothing happened. There was no proceeding. He left. Oregon could have taken a number of actions against him. They didn't. Illinois says, which they should have said, hey, you left Oregon. Wonder why. They looked. Oh, it's for the same reasons that we knew about in 2015, 2016. They don't take a temporary suspension. They could still look at his license. There's other things they could do. But the director cannot, in 2021, say, I'm going to temporarily suspend your license for things we knew about in 2015 and 2016. And if she does, we have a safeguard. It's a hearing within 15 days. So, for an example just like this, where someone does not pose an immediate danger, and we need to look at it. But that safety valve didn't work. It turned into a hearing on the merits, which just violates due process and violates our own rules, and we've seen the time frames. Illinois had the right in 2015, 16, 17, 18, 19, 20, 21. Before any of that happened, they could have temporarily suspended. Oregon could have at any time. Indiana, Washington, all of those places could have. None of them did. Illinois could have brought a case for gross negligence that was mentioned in the argument. Gross negligence gets into what happened, what you did. Were you so reckless that you endangered the life of a patient? They didn't bring that case. They brought the case to say, we consider this surrender an adverse action, and we're going to make it an immediate danger. Last thing I want to say. When the director does that in her office, sitting there, the doctor doesn't know. He's not given any right. No one knows. And I'm not questioning whether that should be able to happen because in a real situation where someone poses an immediate danger, I think we all want to know that the director can do that. But that is not a hearing. That's the director taking an action that she is entitled to do by law. What the legislature intended by putting that 15-day requirement in there is you get the expedited hearing on whether you posed an immediate danger. It did not. There's nowhere we could look in the statute, in the act, in the rules, in the law, to see anything in the legislative history to say, what we really mean is we want to, for this hearing, that we have all these deadlines for 30 days and 20 days, that we're going to make that into a 15-day hearing when you get temporarily suspended. They did not intend to do that because of the abuse that could happen in a case like this. You can't. You could step away from it saying in medicine, in any proceeding, you can't think that a body can discipline someone, which they should always be able to do. You can't have a license. We're taking your license away. No matter what the license is, there's always that process where they say, we don't have time for a hearing. This poses an immediate danger. Fine. That should be there. But you have to have the due process right up front. And Illinois didn't do that. The department didn't do that. The legislature never intended for it to work that way. The plain reading of all of these acts and laws together shows what that 15-day hearing was supposed to be. It wasn't. We asked to do the reverse. Thank you, Mr. Goldberg. Thank you, Ms. Batista. Counsel, both of the arguments in this matter this morning will be taken under advisement and a written disposition shall issue. The court is at standing break for recess.